# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMI SKROVIG, as Personal Representative of the Estate of Thomas Jeffrey Skrovig, Deceased, | ) ) ) ) | CIV 10-4022-JLV |
| Plaintiff, | ) ) ) | DEFENDANT'S BRIEF IN SUPPORT OF ITS RULE 50(b) MOTION FOR JUDGMENT AS A |
| vs. | ) ) ) | MATTER OF LAW AND RULE 59 MOTION FOR NEW TRIAL |
| BNSF RAILWAY COMPANY, a Delaware Corporation, | ) ) ) | |
| Defendant. | ) | |

Defendant BNSF Railway Company ("BNSF") hereby submits this Brief in Support of its Fed. R. Civ. P. 50(b) Motion for Judgment as a Matter of Law and Fed. R. Civ. P. 59 Motion for New Trial.

## BACKGROUND

### A.     The Negligence Claims

This case involves a collision that occurred between a BNSF Railway Company ballast regulator and a motor vehicle driven by plaintiff's decedent, Thomas Jeffrey Skrovig, at a railroad grade crossing protected by federally funded crossbucks.  On March 16, 2010, plaintiff, Tami Skrovig, as Personal Representative of the Estate of Thomas Jeffrey Skrovig, deceased, brought a wrongful death action against BNSF seeking damages for her husband's death. (Dkt. No. 1).  Plaintiff filed an Amended Complaint alleging the following specific claims of negligence against BNSF:

a.  By moving and operating the Ballast Regulator as it approached the grade crossing while failing and neglecting to provide or maintain any reasonable form of signal or warning for the purpose of warning the general public of the approach of the Ballast Regulator;

b.  By moving and operating the Ballast Regulator as it approached the grade crossing while failing to act in compliance with its own policy of stationing employees at grade crossings prior to the approach of the Ballast Regulator for the purpose of warning the general public of the approach of the Ballast Regulator;

c.  By moving and operating the Ballast Regulator across the grade crossing while failing to act in compliance with its own policy of yielding the right of way to vehicular traffic at grade crossings;

d.  By moving and operating the Ballast Regulator at an unsafe speed as it approached the grade crossing;

e.  By failing to keep the Ballast Regulator under proper control or any control sufficient to avoid collision with Thomas Jeffrey Skrovig's vehicle at the grade crossing.

(Dkt. No. 37 at ¶ 16(a)-(e)).

**B.    Pretrial Motions**

On July 11, 2011, BNSF filed a Motion for Summary Judgment on plaintiff's claims. (Dkt. No. 76).  BNSF's motion cited several grounds including that federal law preempted plaintiff's claims alleging that BNSF failed to provide adequate warnings at the crossing and that plaintiff could not base her negligence claim on allegations that BNSF employees violated BNSF's internal company rules since those rules did not create a federal or state standard of care.  (Dkt. No. 76).  The Court denied BNSF's Motion for Summary Judgment in its entirety.  (Dkt. No. 91).

On March 12, 2012, BNSF filed a Trial Motion in Limine to exclude any reference to or evidence regarding BNSF's internal rules or any alleged violation of any internal rule, habit or practice of BNSF or any employee discipline subsequent to the accident due to any BNSF rules violations.  (Dkt. No. 123 at ¶ 5).  The Court denied BNSF's motion. (Dkt. No. 167 at 3).

2

Also on March 12, 2012, BNSF filed a Motion in Limine Re Preemption.  (Dkt. No. 124).  BNSF sought an order prohibiting plaintiff from referring, generally, to BNSF's failure to warn of the presence of the ballast regulator at the obstructed crossing by additional signaling from the equipment itself or additional signage or flagmen at the crossing, and prohibiting plaintiff from referring to BNSF's internal company rules or the violation thereof by employees.  (Dkt. No. 124 at ¶¶ 1-7, 13-14).  The Court held:

> Preemption motion *in limine* #2 [and #4 are] GRANTED in part and DENIED in part. Plaintiff shall not be permitted to inquire or make reference with any witness whether "the grade crossing [itself] lacked any such signal or warning which would give reasonable notice to the general public of the approach of the ballast regulator."  Plaintiff shall be permitted to inquire whether "defendant knew, or in the exercise of ordinary prudence and care should have known, that a signal or warning should have been given to the general public that defendant intended the ballast regulator to travel through the grade crossing."

> Preemption motion *in limine* #13 [and #14 are] GRANTED in part and DENIED in part. Plaintiff shall not make any reference to any failure of BNSF to warn motorists of the presence of a railroad crossing or train. Plaintiff shall be permitted to prove BNSF failed to warn motorists of the presence of a ballast regulator or other maintenance equipment at the intersection.

(Dkt. No. 167 at 6-7).

Despite granting BNSF's Motion related to alternate or different protection at the crossing, the Court denied BNSF's motion related to admission of BNSF's internal company rules referring to maintenance equipment yielding and/or flagging the crossing and denied BNSF request to exclude any reference to BNSF violating its own "'plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries.'"  (Dkt. No. 167 at 7; *cf.* Dkt. No. 124 at ¶¶ 7, 15).

The Court granted BNSF's motion to exclude any reference by plaintiff or her witnesses to the crossing as "an essentially local safety or security hazard" and "the

adequacy of the whistle or horn on the ballast regulator." (Dkt. No. 167 at ¶¶ 16 and 18). The Court denied as "premature" a request by BNSF to exclude any reference to claims premised on the presence of the corn or other vegetation. (*Id.* at ¶ 17).

On April 23, the Court held the final pretrial conference and granted plaintiff's Supplemental Motion *In Limine* regarding "any testimony or portions of the South Dakota Accident Report or other proposed exhibits stating that Thomas Skrovig failed to yield the right of way." (Dkt. No. 179 at 1-2; *cf.* Dkt. No. 169 at 7-8). As to testimony by law enforcement, the Court specifically held:

> Law enforcement may testify to observations, measurements and photographs taken, but may not express any opinions regarding fault for the collision, who or what caused the collision, whether a driver failed to yield to another vehicle, or the speed of either vehicle. The law enforcement reports are not admissible, but may be used to refresh a witness's recollection[.]

(Dkt. No. 179 at 1-2).

### C.   Trial Record Relating to BNSF's Federal Preemption Defenses

The matter was tried to a jury from April 23 through May 2, 2012. On April 24, plaintiff called the first BNSF employee witness, Dwight Wise, to testify. During his testimony, plaintiff sought to introduce BNSF's Maintenance of Way Operating Rules (MOWOR). *See* Trial Exhibits 6 and 6A. The Court reserved ruling on the admission of the rules until the parties could be heard, outside the presence of the jury, on BNSF's objections thereto. On the morning of April 25, BNSF made a standing objection to the admission of the rules as well as BNSF's Engineering Instructions. (*See* April 25 Transcript of Standing Objection). BNSF was granted, without objection by plaintiff, a standing objection to all evidence and testimony from any witness and in closing argument referring to BNSF's internal company rules and specifically Maintenance of

4

Way Operating Rule 6.50.2 (Trial Exhibit 6 and 6A) and Engineering Instruction 14.1.1 (Trial Exhibit 9 and 9A).   BNSF referred to the standing objection throughout the remainder of the trial.

BNSF was granted an opportunity on April 27 to make an offer of proof on BNSF's defense of federal preemption during a specially set evidentiary hearing.  (*See* Transcript of Evidentiary Hearing, Dkt. No. 186).   At the evidentiary hearing, plaintiff stipulated to the admission of affidavits and evidence from South Dakota Department of Transportation employees that conclusively established the crossbucks existing at the crossing on the day of the accident were operational and installed with the participation of federal funds.  *See* Trial Exhibit 774 (Affidavit of Susan Tracy) and Trial Exhibit 775 (Affidavit of Leah DeMers).   Based upon the existence of federal funding for the crossbucks, BNSF argued that plaintiff's failure to warn claims were preempted by federal law.

BNSF also presented testimony that BNSF's MOWOR 6.50.2 and Engineering Instruction 14.1.1 did not meet any of the exceptions to preemption as set forth in 49 U.S.C. § 20106(b).  BNSF General Director of Engineering, Arthur Charrow, testified the rule and instruction were not created pursuant to a regulation or order of either the Secretary of Transportation or the Secretary of Homeland Security.  *See* Dkt. No. 186. He also testified that 49 C.F.R. Part 214 solely addresses "Roadway Worker Safety." *Id.*[1]  He testified that 49 C.F.R. Part 213 addresses "Track Safety Standards."  *See* Filing No. 186.  As one of the individuals involved in the rule-making process with the FRA and one of the individuals responsible for enforcing such regulations at BNSF,

---

[1]   *See also,* 49 C.F.R. § 214.1 Purpose and scope; 214.3 Application; 214.4 Preemptive effect; and 214.7 Definitions.

Charrow testified that neither Part 214 nor Part 213 required BNSF to create MOWOR 6.50.2 or Engineering Instruction 14.1.1.   In fact, MOWOR existed for many, many years – even prior to the FRSA.  The Engineering Instructions are the "best practices" for BNSF in designing, maintaining and operating the infrastructure of the railroad and BNSF can change or amend the instructions at any time without review and approval by the FRA.  BNSF does not have to show the FRA a copy of its Engineering Instructions nor can BNSF be fined for failing to comply with its Engineering Instructions.   BNSF cannot be fined for failing to comply with MOWOR 6.50.2 either.

The discussion with the Court and the bulk of plaintiff's cross-examination of Charrow was focused on the application of Part 214, Roadway Worker Safety, to the facts of this case.   As set forth in the regulatory framework of Part 214, the words "flagman" and "on-track safety" are specifically defined and do not include nor reference the safety of the motoring public at railroad grade crossings:

> Flagman when used in relation to roadway worker safety means an employee designated by the railroad to direct or restrict the movement of trains past a point on a track to provide on-track safety for roadway workers, while engaged solely in performing that function.
>
> On-track safety means a state of freedom from the danger of being struck by a moving railroad train or other railroad equipment, provided by operating and safety rules that govern track occupancy by personnel, trains and on-track equipment.

49 C.F.R. § 214.7.

BNSF counsel argued that a plain reading of the statutory definitions of "flagman" and "on-track safety" demonstrated that plaintiff could not state a claim against BNSF premised upon any alleged violation of Part 214.  Moreover, neither Part 214 nor Part 213 contained a regulation where the FRA required roadway maintenance equipment, such as a ballast regulator, to yield to vehicular traffic at public grade crossings or use a

flagman at such crossings.  In fact, the FRA specifically considered and rejected the suggestion that Part 214 include regulations addressing the movement of equipment at grade crossings.  *See* Trial Exhibit 821, *Roadway Worker Protection* (Final Rule), 61 Fed Reg. 65959, 65961 (Dec. 16, 1996).

BNSF again asserted to the Court that plaintiff's claim that BNSF violated its own internal company rules on yielding to vehicular traffic or flagging the crossing could not stand as such claims were federally preempted and did not fall within any of the exceptions to preemption.  *See* 49 U.S.C. 20106(b).  Even if defendant conceded that a failure to yield claim was not federally preempted, defendant still maintained its position that plaintiff could not state a claim under South Dakota law on BNSF's failure to comply with an internal company rule requiring its employee to yield to vehicular traffic at grade crossings.  The Court reserved ruling on BNSF's federal preemption defenses.

### D.    Trial Record Relating to the Court's Withdrawal Instruction

On May 2, BNSF moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).  *See* Dkt. No. 187.  The Court denied BNSF's motion in part, but held that plaintiff's claim related to "flagging" should be withdrawn from the case.  (*See* Transcript of Hearing on BNSF's Rule 50(a) Motion and Jury Instruction No. 29).

BNSF then moved to strike all testimony related to flagging the crossing and for a mistrial arguing that the admission of the evidence regarding BNSF's internal company rules throughout plaintiff's case in chief had prevented BNSF from obtaining a fair trial. The Court denied BNSF's motions.  The Court denied all other bases of BNSF's Rule 50(a) motion.  At the close of all the evidence and prior to the submission of the case to

the jury, BNSF renewed its Rule 50(a) motion and motions for mistrial and again the Court denied BNSF's motions.  (Dkt. 197).

At the jury instruction conference, BNSF objected to the Court's failure to submit the jury instructions proposed by defendant; in giving the Withdrawal of Claim Instruction (Jury Instruction No. 29) without striking the testimony related to the flagging evidence and without otherwise specifically instructing the jury as to plaintiff's remaining claims; and in failing to instruct the jury on plaintiff's allegations of negligence and specific remaining claims as set forth in her Amended Complaint.  *See* Dkt. No. 37, Amended Complaint, at ¶ 16(a)-(e).  Subsequently, the jury returned a verdict in favor of plaintiff in the amount of $2 million.  *See* Dkt. No. 192.

## ARGUMENT

## I.    BNSF Is Entitled To Judgment As A Matter of Law

### A.    Plaintiff's Failure to Warn Claims Are Preempted by Federal Law

BNSF is entitled to judgment as a matter of law because of all of plaintiff's failure to warn claims are preempted by federal law.

***Traffic Signage and Grade Crossing Protection Claims.***  As this Court found, plaintiff's claims against BNSF with respect to grade crossing protection – including the presence, adequacy, location and timing of protective devices, warning devices, signals and flagman – are preempted by federal law.  *See* Federal Railroad Safety Act of 1970 ("FRSA"), 49 U.S.C. §§ 20101 *et seq.*, and the Highway Safety Act of 1973, 23 U.S.C. §§ 130, *et seq.*, as amended, and the regulations promulgated thereto.

The participation of federal funds at a grade crossing with operative crossbucks eviscerates a plaintiff's failure to warn claims.[2]  Here, the evidence established that the crossbucks in place on day of the accident had been approved and installed with the participation of federal funds.[3]  At both the summary judgment stage and at trial, plaintiff never disputed the participation of federal funding for the crossbucks.  Allowing the trial to proceed on plaintiff's failure to warn claims "to fully develop the record" was unnecessary, unwarranted, and necessarily caused undue prejudice to BNSF and deprived BNSF of a fair trial.

As explained in prior briefing (Dkt. 129 at 17-22), plaintiff's claims with respect to both traffic signage and grade crossing protection are also preempted, superseded or precluded by state law including the *Manual on Uniform Traffic Control Devices* ("MUTCD").[4]  The MUTCD was promulgated by the U.S. Secretary of Transportation in 1966 and has been incorporated by reference in 23 C.F.R. Part 655, Subpart F.  The MUTCD is the national standard for all traffic control devices pursuant to 23 U.S.C. § 109; 23 U.S.C. § 402(a) and 23 C.F.R. § 655.603 and requires that the states,

---

[2] Federal Railroad Safety Act of 1970 ("FRSA"), 49 U.S.C. §§ 20101 *et seq.*, and the Highway Safety Act of 1973, 23 U.S.C. §§ 130, *et seq.*, as amended, and the regulations promulgated thereto; *see also Grade v. BNSF Railway Company,* 676 F.3d 680, 685-86 (8th Cir. 2012).

[3] *See* Trial Exhibit 774 Affidavit of Susan Tracy with attached exhibits (July 8, 2011) and Trial Exhibit 775 Affidavit of Leah DeMers with attached exhibits (July 7, 2011); Trial Exhibit 117 (Photo number DEF00050 showing the unobstructed crossbucks at the crossing where the accident occurred).

[4] *See* S.D. Codified Laws § 3-28-11; Federal Highway Administration, Adoption Status of 2000 and 2003 Editions of National MUTCD by States and Federal Agencies (Sept. 19, 2011), http://mutcd.fhwa.dot.gov/knowledge/natl_adopt_2000_2003.htm.

including South Dakota, substantially conform to its requirements.[5]   The crossbucks provided a sufficient signal and warning of the presence of the railroad grade crossing and required plaintiff, as a matter of law, to yield to rail traffic, including but not limited to BNSF's ballast regulator.  *See* MUTCD §§ 8A.01 and 8B.01; S.D. Codified Laws §§ 49-16A-87; *see also,* S.D. Codified Laws §§ 32-29-4, 32-25-13, and 32-25-13.

   ***Ballast Regulator Claims.***  Federal law also preempts plaintiff's claims against BNSF with respect to (1) failing to warn of the presence of the ballast regulator (*see* Dkt. No. 37 at ¶ 16(a)-(c)), and (2) failing to comply with BNSF's own internal rules (*see id.*), including but not limited to MOWOR 6.50.2 (Trial Exhibits 6 and 6A) and Engineering Instruction 14.4.1 (Trial Exhibits 9 and 9A).   The Federal Railroad Administration ("FRA") has promulgated federal regulations that substantially subsume the subject matter of the movement and safety of on-track railroad maintenance equipment.  *See* 49 C.F.R. Part 214.   The FRA considered and rejected a proposal to promulgate additional regulations to protect railroad workers from accidents with vehicle traffic at highway-rail grade crossings.[6]

   Moreover, the crossbucks mandated that a driver yield and established a rule of the road for all drivers on approach to this grade crossing.   The crossbucks were

---

   [5] *See also* Trial testimony by plaintiff's retained experts, Dr. Noyce and Dr. Edwards, wherein they conceded that the MUTCD is the standard for grade crossing warning devices and that a crossbuck is equivalent to a yield sign to all railroad traffic.

   [6] *See* Trial Exhibit 821 FRA Final Rule 61 FR 65959, 1996 WL 7160808 (Dec. 16, 1996) at pp. 4-5, 28 and 32.  Where the FRA determines that a particular regulation is not justified, that determination has the same preemptive effect as the adoption of a regulation.  *See Burlington Northern R. Co. v. State of Minnesota,* 882 F.2d 1349, 1351-52 (8th Cir. 1989) ("The promulgation of regulations by the FRA, in light of objections raised by commentators to the adoption of any regulations permitting or facilitating the operation of trains without cabooses, takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute.").

approved by the authorized federal regulators (FRA) through a number of means and certainly when the FRA approved funding for the crossing.    This FRA approval preempts any effort to establish under state law a different rule as to who shall yield to whom at the crossing.    BNSF's internal rules do not override the direction given by crossbucks approved under federal law.

The Eighth Circuit has held that, once the defendant shows that there are regulations covering the subject matter, "the burden shifts to the party resisting preemption to prove" a statutory exception to the general rule.  *Duluth, Winnpeg & Pac. Ry. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008).   Plaintiff relied upon the exception in § 20106(b)(1)(B), but the FRA has explained that a plan, rule, or standard fits within the paradigm of a Federal standard of care only where "Federal law requires it and determines its adequacy."  *Passenger Equipment Safety Standards*, 75 Fed. Reg. 1180, 1209 (Jan. 8, 2010); *see also Hazard Materials*, 74 Fed. Reg. 1770, 1791-92 (Jan. 13, 2009) (exception applies "only to the extent" that the internal plan is "imposed by" or "specifically required by" a federal regulation or order).   "The fact that federal law requires that a railroad file copies of its operating rules with the [FRA] does not equate that the rules themselves were created pursuant to an order of the Secretary of Transportation."  *Gilbert v. Norfolk S. Ry. Co.*, No. L-09-1062, 2010 WL 2333773, at ¶ 55 (Ohio App. June 11, 2010).  *See also Zimmerman v. Norfolk Southern Corp.*, No. 10-cv-02267, 2011 WL 3625039, at *12 & n.10 (E.D. Pa. Aug. 17, 2011) (explaining that the regulations merely require that the railroad keep copies and records of the rules but do not require the railroad to adopt the alleged policies at issue); *Kill v. CSX Transp.*, No. 1-09-13, 2009 WL 5067182 at ¶ 33 (Ohio App. Dec. 28, 2009) ("it is clear that the

exception contained in Section 20106(b)(1)(B) directly concerns plans or rules that specifically relate to federal requirements").

In its order on summary judgment, the Court quoted from language in 49 C.F.R. §213.1(a), 49 C.F.R. §214.1(a) and 49 C.F.R. §214.501(b) authorizing a railroad to adopt and enforce additional or more stringent requirements not inconsistent with "this part". The quoted language does just what it says – authorize more stringent internal rules. It does not require those rules or mandate any form of federal agency review of those rules. Thus, these rules are not created pursuant to federal regulations. They do not establish a federal standard of care that could be the basis for liability under 49 U.S.C. §20106(b)(1)(B). Indeed, federal and state courts have refused to recognize an exception to federal preemption under the statute for other internal rules that were similarly authorized by the language of the regulations, but not required by them. *See, e.g.*, *Veit v. Burlington N. Santa Fe Corp.*, 249 P.3d 607, 620-21 (Wash. 2011) (BNSF internal speed limits were not created pursuant to federal regulations); *Murrell v. Union Pac. R.R.,* 544 F. Supp. 2d 1138, 1150 (D. Or. 2008) (same); *Gilbert v. Norfolk S. Ry. Co.*, No. L-09-1062, 2010 WL 2333773, at ¶¶ 50-55 (Ohio App. June 11, 2010) (internal operating rules to use flares were not created pursuant to a federal regulation).

This Court has misconstrued the effect of the regulations. In inviting railroads to adopt their own internal rules, the FRA has not placed liability upon them. This would defeat the entire purpose of the agency in making the invitation. The FRA itself has said: "The basic purpose of the statute – improving railroad safety – is best served by encouraging regulated entities to do more than what the law requires and would be disserved by increasing potential tort liability of regulated entities that choose to exceed

Federal standards, which would discourage them from ever exceeding Federal standards again." *Passenger Equipment Safety Standards*, 75 Fed. Reg. at 1209. Thus, "[a] plan, rule, or standard, or portions of one, that a regulated entity creates on its own in order to exceed the requirements of Federal law **does not fit the paradigm of a Federal standard of care**—Federal law does not require it and, past the point at which the requirements of Federal law are satisfied, says nothing about its adequacy." *Id.* (emphasis added). "Railroads regularly exceed these standards now," and "Section 20106 does not increase the potential tort liability of railroads that choose to do so." *Id.* at 1210.  Courts have reached the same interpretation of 49 U.S.C. § 20106(b)(1)(B).[7] The FRA's reasonable interpretation is entitled to deference. *California State Legislative Board v. Dep't of Transportation*, 400 F.3d 760, 765 (9th Cir. 2005).

Here, the evidence conclusively established that neither MOWOR 6.50.2 (Trial Exhibits 6 and 6A) nor Engineering Instruction 14.1.1 (Trial Exhibits 9 and 9A) were created pursuant to an order or regulation of the Secretary of Transportation or the Secretary of Homeland Security, nor do said internal company rules otherwise establish a federal standard of care under the FRSA.  *See* Transcript of Evidentiary Hearing (Filing No. 186); 49 U.S.C. § 20106(b).

Further, the regulations that plaintiff seeks to invoke are designed to protect railroad workers, not drivers in the position of plaintiff.   For example, the purpose of

---

[7]  *Zimmerman v. Norfolk Southern Corp.,* Civ. No. 10-cv-02267, 2011 WL 3625039, *12 n. 10 (E.D.Pa. Aug. 17, 2011) ("[N]othing in 49 U.S.C. § 20106 provides a private right of action for a railroad's failure to comply with any internal policy which it created, which policy was not otherwise created pursuant to a federal order or regulation.  * * * *Such an interpretation would discourage railroads from otherwise implementing internal policies in order to avoid self-imposed duties of care.*") (emphasis added); *see also Melton v. BNSF Ry. Co.,* 322 N.W. 174, 191 (Tenn. App. Feb. 22, 2010) ("for purposes of preemption, internal regulations are irrelevant"), *appeal denied* (Tenn. Aug. 25, 2010).

Part 214, "Railroad Workplace Safety," is "to prevent accidents and casualties to employees involved in certain railroad inspection, maintenance and construction activities."  49 C.F.R. § 214.1.  Subpart 214.341(a), in particular, is concerned with the "the safety of roadway workers who operate or work near roadway maintenance machines."  These regulations do not require the creation of internal rules to protect the general motoring public.  Plaintiff's situation falls outside the intent of both the regulations and the internal rules on which he relies.  Accordingly, BNSF is entitled to judgment as a matter of law on plaintiff's failure-to-warn, failure to yield, and any other claims based on internal rules.

### B.   BNSF Is Not Liable Under State Negligence Law

The evidence at trial showed no act of negligence by BNSF cognizable under South Dakota law.  *McGuire v. Curry,* 766 N.W.2d 501, 506-07 (SD 2009).  "[A] prerequisite to proceeding on the cause of action is establishing the existence of a duty."  *Id.* at 508.  Here, plaintiff based her claim of negligence on the alleged violation of BNSF's internal policies, specifically MOWOR 6.50.2 (Trial Exhibits 6 and 6A) and Engineering Instruction 14.1.1 (Exhibits 9 and 9A).  However, these internal policies do not create a duty or actionable standard of care under state law.  *See Wuest ex rel. Carver v. McKennan,* 619 N.W.2d 682, 689 (SD 2000) ("Public policy encouraging standards higher than generally employed in the community dictates that individual hospital policies are not determinative of the standard of care.").  Thus, a reasonable jury did not have sufficient evidence to support any claim of negligence against defendant.

Furthermore, the evidence offered by plaintiff conclusively established that the sole proximate cause of the accident was Mr. Skrovig's negligence in violating *at least* two South Dakota statutes.  *See* South Dakota Codified Law § 32-25-13 and § 32-29-4.  Mr. Skrovig violated § 32-25-13 when he failed to reduce the speed of his vehicle to fifteen miles per hour within fifty feet of the crossing even though his view was obstructed.  He is thereby guilty of negligence as a matter of law.  At trial, it was undisputed that Mr. Skrovig's view of the tracks was obstructed as defined by SDCL § 32-25-13.  Also, both of plaintiff's retained experts, Dr. Mark Edwards and Dr. David Noyce, tacitly admitted in trial testimony that plaintiff's decedent was in violation of said state law at the time of the accident.  Defendant's retained expert, John Scott, P.E., likewise testified that plaintiff's speed at the time of the accident was "at least thirty miles per hour" or twice the legal speed limit under South Dakota law.

Mr. Skrovig violated § 32-29-4 when the ballast regulator gave a clearly audible signal (*i.e.,* two longs, a short, and a long blast of the horn for ten seconds duration), and he failed to bring his vehicle to a complete stop within fifty feet, but not less than fifteen feet from the nearest rail of such railroad pursuant to.  The evidence was undisputed at trial that the horn was sounded and audible (*e.g.,* Brian Skrovig testified he heard a horn, "loud like a locomotive", emanating from the railroad tracks at or about the time of the accident.).

In light of these violations, the evidence offered by plaintiff was more than slight when compared with the alleged negligence of BNSF, and pursuant to South Dakota law, plaintiff is barred from recovery.  *See* SDCL 20-9-2.  No reasonable jury could find that the negligence of Mr. Skrovig was "small" in comparison to the claimed negligence

15

of BNSF.[8]  Furthermore, there is no competent proof of any causal connection between the defendant BNSF's action or inactions and the damages alleged in the Amended Complaint.

## II.    BNSF Is Entitled To A New Trial

Alternatively, BNSF is entitled to a new trial because the court committed several prejudicial errors and because the verdict and damages awarded are against the weight of the evidence.

### A.    BNSF Was Denied A Fair Trial

Liability and compensatory damages were tried on the basis of erroneous evidentiary rulings.   These evidentiary rulings were substantially prejudicial, both individually and cumulatively.

First, plaintiff was allowed, over objection, to pile on evidence of BNSF's alleged failure to warn of the approach of the ballast regulator when BNSF undisputedly had no duty to warn of the presence of the ballast regulator.   The sheer quantum of such evidence – administered to the jury in daily doses – made it impossible for the jury not to consider the alleged failure to warn even though it should have had no bearing on the outcome.

---

[8] *See* SDCL § 32-25-13; *Wooley v. Chicago & N. W. Ry. Co.,* 50 N.W.2d 644, 646 (SD 1951) (driver's failure to look and listen at a railroad grade crossing when she reached a point where she had an unobstructed view of the track constituted negligence more than slight barring her recovery against the railroad); *Wood v. City of Crooks,* 559 N.W.2d 558, 560-61 (SD 1997) ("[W]hether [a party's] contributory negligence was more than slight may be decided as a matter of law….'Slight,' with regard to 'negligence,' was previously defined by this court as 'small of its kind or in amount; scanty; meager.'" (*citing Friese v. Gulbrandson,* 8 N.W.2d 438, 442 (1943)); *Lovell v. Oahe Elec. Co-op,* 382 N.W.2d 396, 399 (SD 1986) (In reversing jury verdict for plaintiff, the South Dakota Supreme Court held: "When facts show that the plaintiff, beyond reasonable dispute, was guilty of negligence more than slight, it is the function of the trial court to hold, as a matter of law, for the defendant.").

Plaintiff was repeatedly allowed to offer evidence of, refer to and argue about MOWOR 6.50.2 and Engineering Instruction 14.1.1 as well as reference generally BNSF's practice of "flagging", "warning" about the approach of the ballast regulator, and the purpose of flagging, the "railroad's responsibility at the crossing," etc. (*See* Testimony of Wise, Vick, Miller, Holman and Seiter).

Plaintiff made this a pivotal issue during the first seven days of the eight day trial. Plaintiff asked a variation of the same question with every railroad employee witness: "If an equipment operator is not prepared to stop or cannot yield, then flagging is an option, right?" (*See id.*).  Likewise, the claimed admissions against BNSF's interest that were offered included evidence that BNSF Claims Department personnel admitted BNSF failed to comply with its own "rules" and "were at fault for the accident." (*See* Testimony of Donald Limmer and Tami Skrovig).  Plaintiff's notes from the meeting with BNSF representatives specifically referenced flagging, and her sister's testimony that BNSF's foreman, Miller, "strongly implicated himself" and that he admitted that "he should've been there [at the accident crossing]" could not be cured by simply redacting the exhibits containing rules or redacting plaintiff's meeting notes.  In any event, despite BNSF's objections, both of these were published (without redaction) to the jury early on in the trial.  (*See* Trial Exhibits 6, 6A, 9, 9A, 247, and 247A; *see also* Testimony of Charlene Alverson).  Plaintiff's liability expert, Dr. Noyce, was allowed to testify that the ballast regulator lacked conspicuity to warn of its approach:  nothing in front of the ballast regulator to warn of its approach; no reflective material or lights.  (*See* Testimony of Dr. Noyce).

Plaintiff's liability experts were allowed to testify that BNSF violated its own internal rules on yielding and flagging, despite the fact that both admitted the warning devices at the crossing – crossbucks – were appropriate and required the driver on the roadway to yield to rail traffic.  (*See* Testimony of Dr. Noyce and Dr. Edwards).  Both testified to the effect that, "If Dwight Wise had followed BNSF policy, this accident wouldn't have happened."  (*Id.*).  Dr. Edwards was specifically asked and testified that in his opinion had a flagman been present, the accident would not have occurred.

At the same time, the Court precluded BNSF from eliciting testimony from any witness that BNSF has no duty to warn of the approach of the ballast regulator or that BNSF does not have the authority to change the warning device at the crossing or the authority to determine what is the appropriate warning device at the crossing.[9]  This severely handicapped BNSF from responding to plaintiff's argument that it had acted with negligence in failing to warn.  The Court's ruling to exclude this evidence interfered with the adversarial process and left the jury with an incomplete and misleading picture of BNSF's ability to take actions to warn, which unfairly and unduly prejudiced BNSF.

BNSF therefore moved for a mistrial and that motion should have been granted. The case was tried on an erroneous basis – permitting almost continuous testimony on the flagging issue and prohibiting any testimony of the lack of a railroad duty to do so. Once the Court decided that the framework on which the case had been tried was in error (May 1, 2012 Tr. 33, 45), it should have granted a mistrial.  *See* May 1, 2012 Tr. 42-43, 47.

---

[9] *See* Testimony of Dr. Noyce and Dr. Edwards, sustaining plaintiff's objection to counsel for BNSF's question to the effect that a determination of need for a regulatory yield sign is made by the roadway authority.

The Court's instruction withdrawing the "flagging claim" (Dkt. 189, Jury Instruction No. 29) was not sufficient to remove the prejudice to BNSF generated by the improper and lopsided evidence presented to the jury.   The improper evidence was so inflammatory and prejudicial that a withdrawal instruction, however detailed and specific, could not cure the error.   In any event, as explained below, *this* withdrawal instruction given the jury was inadequate to cure the errors.   It was not detailed or specific but rather was vague and misleading.   It did not instruct the jury that BNSF had no duty to flag the crossing; it did not instruct the jury to disregard the evidence that had been erroneously admitted; and it did not cure the "piling-on" effect against BNSF for purposes of the jury's application of South Dakota's comparative negligence standard and the quantitative weighing required of it.

The Court erred in allowing the opinion testimony of plaintiff's expert witness, economist Dr. Ralph Brown and for not granting in part or in whole Defendant's Motion in Limine to Exclude Testimony of Plaintiff's Economist Dr. Ralph Brown (Dkt No. 127) for each and all of the reasons set forth in said Motion.   The Court also erred in allowing, over BNSF's objection, evidence of blood testing of the ballast operator, Dwight Wise.  (May 1, 2012 Tr. 43).

Finally, defendant was denied a fair trial due to the repeated misconduct of plaintiff's counsel in attempting to impugn the character of defense counsel with witnesses (*e.g.*, suggesting during direct examination of Dwight Wise and Nick Seiter that BNSF counsel told them how to testify, to change their testimony, and what to say); attempting to impugn the character of defense counsel during closing argument by suggesting that BNSF counsel suborned perjury (*i.e.,* "The lawyer tells the witness, 'If

anyone asks you, I told you to tell the truth.  Now let me tell you what the truth is."); and repeatedly violating this Court's Order on defendant's trial motion in limine by referring to excluded evidence, including but not necessarily limited to, to the following references:

- The blood alcohol testing of BNSF's employee Dwight Wise during the direct examination of retired Sheriff Deputy Burns and Sergeant Gromer (*see* Filing No. 167 Pretrial Order; *cf.* Filing No. 123 BNSF's Trial Motion in Limine at ¶ 6);

- The size or financial condition of BNSF by asking the jury about knowledge of BNSF, "a fairly large" company based in Fort Worth, "throughout western part of states," and whether anyone owns "Warren Buffett stock." (*See id.; cf. id.* at ¶¶ 7 and 8); and

- The financial condition of plaintiff and her family by plaintiff's testimony that due to the accident she could no longer retire at age 55 and watch grandchildren (*See id.*; *cf. id.* at ¶ 9).

The Court committed prejudicial error in failing to grant BNSF a mistrial when plaintiff's counsel repeatedly and intentionally violated the Court's Pretrial Order on BNSF Trial Motion in Limine over timely and numerous objections.  It was reasonably probable that the misconduct of counsel for plaintiff influenced the jury's verdict and a new trial should be granted on this basis alone.  *See, e.g., Sanders-EL v. Wencewicz*, 987 F.2d 483 (8th Cir. 1993) ("what may be harmless [misconduct] in a case where the evidence strongly favors one party may be fatally prejudicial in a close case"); *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 206-07 (3d Cir. 1992); *Spurlock v. Lawson*, 881 F. Supp. 436, 438-39 (E.D. Ark. 1995).

**E.     The Jury Instructions were Erroneous and Highly Prejudicial**

The jury was also misdirected by legal errors in the charges.   Instead of correcting the errors stemming from the evidentiary rulings, the instructions compounded them.  For the reasons stated on the record at trial including at the May 1 jury instruction conference, the final instructions given by the Court were erroneous and the errors were not harmless.

Perhaps the most egregious of these errors – but not the only error – was the Court's withdrawal instruction.   *See* Dkt. 189 (Instruction No. 29).   This instruction was plainly inadequate.  It was unclear and misleading.  It did not inform the jury that BNSF had no duty to post a flagman and therefore the jury should disregard any and all evidence that BNSF had an obligation to post a flagman and whether it was fulfilled. Rather than informing the jury of the basis for the withdrawal – that BNSF had no duty – the instruction specifically told the jury that the reasons for the withdrawal should not "concern you."   *See id.*   The instruction said that the case should be decided solely on the evidence on the "remaining claims" (*see id.*), but did not explain what the remaining claims were or how the jury would decide which evidence related to the remaining claims.   The jury was not equipped to make this evaluation itself, without further guidance from the Court.  In putting the jury in charge of identifying the remaining claims and the improper evidence, the Court abdicated its role and gave the jury an inappropriate and confusing instruction.   *See* May 1, 2012 Tr. 47 (denying BNSF's motion to strike the improper testimony and to instruct the jury to disregard that evidence); *see id.* at 108-09.

The instruction did not prevent the jury from considering this evidence for other purposes, such as weighing and comparing the alleged negligence of BNSF to the

driver's negligence.  *See* Dkt. 189 (Instruction 30).  For instance, even assuming the jury found liability on the basis of a different theory (i.e., failure to yield), the jury could have improperly used this evidence to find BNSF's negligence to be substantially greater when comparing the negligence of Mr. Skrovig.  The jury could have also used the evidence to determine that Mr. Skrovig's negligence was slight or "small" in comparison because there was no flagman for him to alert him to the presence of rail traffic and thereby prevent him from entering the crossing.

The Court erred in instructing the jury that BNSF's internal rules for on-track maintenance equipment established a "standard of care" and that "[e]mployee's acts or omissions not in accord with the safety rules may be evidence BNSF was negligent." Dkt. 189 (Instruction Nos. 14).  The Court further erred by including the language from the internal rules in the jury instructions, thereby giving those internal rules the status of law.  Dkt. 189 (Dkt. 15-16).  As shown above and argued to the Court in the jury instruction conference, these internal rules were preempted by federal law and did not establish a standard of care under federal or state law.  *See* May 1, 2012 Tr. 65-68, 71-72.  By highlighting these rules and treating them as establishing a standard of care, the Court acted directly contrary to the rule of preemption established by the FRSA.  The Court should not have allowed any claim of liability to rest upon the internal rules of the railroad in any way.

The Court also erred in refusing to submit the jury instructions proposed by defendant.  *See* Dkt. 130.  For instance, the Court rejected BNSF's requested instructions that were critical to the jury's ability to evaluate the fault of the driver under state law.  *See* Dkt. 130 (Proposed Instruction Nos. 19, 23, 30, 31, 32, 36, 37, 38, 40,

41, 47).  Here, the level of the driver's fault was a hotly contested issue.  Yet the court gave incomplete and misleading guidance on the responsibilities of the driver when approaching a crossing.  *See, e.g.*, May 1, 2012 Tr. 115-17.

The Court erred in limiting the driver's responsibilities to yielding to oncoming trains and failing to make clear that the driver must yield to other forms of rail traffic as well.  *See, e.g.*, May 1, 2012 Tr. 78, 88, 90.  For instance, the Court erred in failing to give BNSF's proposed instruction No. 39 (Dkt. 130), which would have clarified the ambiguity in given instruction No. 21.  *See* May 1, 2012 Tr. 78.  The Court instructed the jury that a crossbuck "warns the motorist of the necessity of looking out for trains."  (Dkt. 189, Instruction No. 21).  BNSF's proposed instruction No. 39 would have confirmed that a motorist such as the plaintiff is required to both "look out for railroad traffic" and "yield to the railroad traffic."  Dkt. 50.  If given, the jury would have been instructed on the plaintiff's obligation to look out for and yield to the ballast regulator.  The given instructions were vague and confusing on this issue.  *See, e.g.*, May 1, 2012 Tr. 90.

The Court also erred in refusing BNSF's proposed instruction on present value. *See* Dkt. 130 (Proposed Instruction No. 59).  This is a state pattern instruction and is required in negligence actions.  *See Howard v. Sanborn*, 483 N.W.2d 796, 801 (S.D. 1992).  The Court erred in refusing BNSF's proposed instruction No. 11 as well.  *See* May 1, 2012 Tr. 114.  That instruction would have helped instruct the jury on what claims of plaintiff remained in the case to be decided by the jury.

The instruction errors, both individually and cumulatively, substantially prejudiced BNSF and materially affected the verdict.

### C.    The Verdict and the Damages Awarded Were Against the Weight of the Evidence

As discussed in the context of BNSF's Motion for Judgment as a Matter of Law (Dkt. No. 187), the verdict for plaintiff is against the clear weight of the evidence showing that plaintiff's claims are preempted and that Mr. Skrovig, was negligent in a degree that was more than slight in comparison with the alleged negligence of defendant.

Further, the award of damages was excessive and not based on the evidence. The award of damages was excessive in light of the uncontroverted evidence that plaintiff as personal representative of the Estate of Thomas Skrovig failed to mitigate her alleged damages, and in particular failed to take any reasonable and necessary steps to maintain the business and therefore the revenues of Skrovig Construction, Inc. despite having previously co-managed the company and had available to her the resources and key personnel to continue and develop the business.

Moreover, the verdict is the result of jury nullification urged by plaintiff's counsel both in opening statement [10] and in closing argument.[11]  Allowing the verdict to stand will result in a miscarriage of justice.

## CONCLUSION

---

[10] *E.g.* Driver's must stop for trains and locomotives at grade crossings, special laws passed giving them the right of way.  In this case, we are not talking about a train, we are talking about a ballast regulator.  Railroad had special rules for equipment.

[11] *E.g.*, Thomas Skrovig probably did not know the laws governing his speed at railroad grade crossings and there was no speed limit sign posted at the crossing.

For the reasons stated above and previously in the record, the Court should enter judgment as a matter of law in favor of BNSF, and this action should be dismissed with prejudice.  Alternatively, the Court should grant BNSF a new trial.

DATED this 30th day of May, 2012.

                           BNSF RAILWAY COMPANY, Defendant

                           By:    *s/ Thomas C. Sattler*
                                   Thomas C. Sattler
                                   Nichole S. Bogen, *pro hac vice*
                                   WOLFE, SNOWDEN, HURD,
                                          LUERS & AHL, LLP
                                   Wells Fargo Center
                                   1248 "O" Street, Suite 800
                                   Lincoln, NE 68508
                                   T:  (402) 474-1507
                                   tsattler@wolfesnowden.com
                                   nbogen@wolfesnowden.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2012, I electronically filed the foregoing **Defendant's Brief in support of its Motion for Judgment as a Matter of Law and Motion for New Trial** with the Clerk of the Court using CM/ECF system which sent notification of such filing to the following:

> Shane E. Eden
> Edwin E. Evans
> Davenport, Evans, Hurwitz, & Smith, LLP
> 206 West 14th Street
> P.O. Box 1030
> Sioux Falls, SD 57101-1030
> SEE@dehs.com
> eevans@dehs.com
> *Attorneys for Plaintiff*

> *s/ Thomas C. Sattler*
> Thomas C. Sattler

26